UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PAULETTE M. CZUBA,

                Plaintiff,

                              06-CV-0347-A(F)

            v.                **DECISION**
                              **and ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

---

**INTRODUCTION**

    Plaintiff Paulette Czuba ("Plaintiff"), brings this action pursuant to the Social Security Act § 216(I) and § 223, seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits. Specifically, Czuba alleges that the decision of the Administrative Law Judge ("ALJ") John J. Mulrooney II was erroneous because it was not supported by substantial evidence in the record.

    The Commissioner moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, on the grounds that the ALJ's decision was supported by substantial evidence. Plaintiff opposes the Commissioner's motion and cross-moves for judgment on the pleadings, or in the alternative for the case to be remanded. For the reasons set forth below, I hereby remand this claim to the Commissioner for further proceedings consistent with this Decision.

**BACKGROUND**

On December 30, 2002, plaintiff Paulette Czuba, at the time a 36 year old former nurse's assistant, personnel scheduler, personnel quality control auditor and counselor, applied for Social Security disability benefits claiming that she had become unable to work as of May 17, 2001 because of degenerative disc disease, herniated discs, back pain and migraine headaches (Tr. 66-68, 77). Plaintiff's application was initially denied (Tr. 34). She then filed a request for a hearing, and on November 2, 2004, a hearing was held before ALJ John J. Mulrooney II (Tr. 736-69). On November 23, 2004, the ALJ found that the plaintiff was not disabled (Tr. 17-27). This became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 3, 2006 (Tr. 6-10). This action followed.

**DISCUSSION**

**I.   JURISDICTION AND SCOPE OF REVIEW**

Title 42, Section 405(g) of the United States Code grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. Mathews v. Eldridge, 424 U.S. 319, 320 (1976). Additionally, the section directs that the District Court must accept the Commissioner's findings of fact if those findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 117, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007). Substantial evidence is

defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by the substantial evidence).

The Commissioner asserts that his decision is supported by substantial evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the court is convinced that plaintiff can prove no set of facts in support of his claim which would entitle her to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II.   <u>STANDARD FOR ENTITLEMENT TO SOCIAL SECURITY BENEFITS</u>

Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ..." 42 U.S.C. §§ 423(d)(1)(A) (concerning Old-Age, Survivors', and Disability Insurance ("OASDI")); 42 U.S.C. § 1382c(a)(3)(A) (2004) (concerning SSI payments). An individual will only be considered "under a disability" if her impairment is so severe that she is both unable to do her previous work *and* unable to engage in any other kind of substantial gainful work that exists in the national economy. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

"Substantial gainful work" is defined as "work that exists in significant numbers either in the region where the individual lives or in several regions of the country." <u>Id.</u> Work may be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if work responsibilities are lessened from previous employment. 20 C.F.R. § 404.1572(a) (OASDI); 20 C.F.R. § 416.972(a) (SSI). Work may be considered "gainful" if it is the kind of work usually done for pay or profit, whether or not a profit is realized. §§ 404.1572(b) and 416.972(b). Furthermore, "substantial gainful work" is considered available to an individual regardless of whether such work exists in his immediate area, whether a specific job vacancy exists for him, or whether she would

be hired if she were to apply for work.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

When a claimant requests a Social Security disability hearing before an Administrative Law Judge, SSA regulations require the ALJ to perform a five-step sequential evaluation.  Pursuant to this analysis:

- (i) if the claimant is performing substantial gainful work, she is not disabled;

- (ii) if the claimant is not performing substantial gainful work, her impairment(s) must be "severe" before she can be found to be disabled;

- (iii) if the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry

- (iv) if the claimant's impairment (or impairments) does not prevent her from doing her past relevant work, she is not disabled;

- (v) even if the claimant's impairment or impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(I)-(v) and 416.920(a)(4)(I)-(v).  The ALJ in this case performed the required five-step evaluation and determined that: (I) the plaintiff had not engaged in substantial gainful employment from May 17, 2001 to October 25,2004 ; (ii) the plaintiff had medically determinable impairments that included mild scoliosis, chronic neck and back pain, mild lumbar disc bulges,

cervical degenerative disc disease, status post discectomy and fusion, chronic pain syndrome, leg length discrepancy, asthma, lumbar spina bifida defect, migraine headaches, post-traumatic stress disorder, major depressive disorder, adjustment disorder and a personality disorder; (iii) the plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (iv) the plaintiff was not able to perform her past relevant work and; (v) the plaintiff had the residual functional capacity to perform a range of light work (Tr. 18-25).

### III. **The ALJ improperly evaluated the plaintiff's residual functional capacity by failing to consider her mental limitations in combination with her physical limitations.**

The medical evidence supplied by consultative physicians, Drs. Mangold and Burnett, supports the finding that the plaintiff had mental conditions which would limit her ability to sustain a simple unskilled job. I find that the ALJ committed error by failing to consider such mental conditions in combination with plaintiff's physical limitations in evaluating her residual functional capacity ("RFC").

Dr. Mangold, a state agency medical consultant, assessed plaintiff's mental functioning on February 2, 2002 and found plaintiff to be "moderately limited" in nine areas of work related functioning (Tr. 201-202). Dr. Mangold reported that the plaintiff would be moderately limited in her ability to; maintain attention and concentration for extended periods, perform activities within

a schedule, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without supervision, and work in coordination with or proximity to others without being distracted by them (Tr. 201). In addition, Dr. Mangold also concluded that the plaintiff would be moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 202). Furthermore, plaintiff was found to be moderately limited in her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness (Tr. 202).

Dr. Mangold also completed a Psychiatric Review Technique which concluded that plaintiff had depressive disorder, post traumatic stress disorder, and borderline personality disorder (Tr. 208-212). Dr. Mangold also reported that plaintiff had mild restrictions in activities of daily living, moderate difficulty in social functioning and maintaining concentration, persistence, or pace with one or two episodes of decompensation lasting for extended durations (Tr. 215).

Similar findings were reached by Dr. Burnett in a subsequent mental residual functional capacity assessment on April 23, 2003

(Tr. 358). Dr. Burnett found the plaintiff to be moderately limited in eight categories of work related functions (Tr. 358-360). In addition, Dr. Burnett reached the same findings as Dr. Mangold in his Psychiatric Review Technique (Tr. 372).

The ALJ found that plaintiff had the residual functional capacity to engage in a range of light work that involves occasional postural maneuvers, such as balancing, stooping, kneeling, crouching or climbing of ramps or stairs; avoids crawling, overhead work or climbing of ladders, ropes or scaffolds; involves no more than occasional pushing and/or pulling with the upper extremities, including the operation of hand levers; avoids overhead reaching; avoids concentrated exposure to fumes, odors, dusts, gases, environments with poor ventilation, temperature extremes, excessive vibration, extreme wetness or humidity; involves no more than simple, routine, repetitive tasks, not performed in a production or quota based environment; only simple, work related decisions; relatively few work place changes and is limited to nor more than occasional interaction with supervisors, coworkers or the public (Tr. 24).

The ALJ erred in failing to properly consider the plaintiff's mental functional limitations found by Drs. Mangold and Burnett, along with plaintiff's physical limitations, in determining the plaintiff's RFC. Upon remand, the ALJ shall reconsider the combination of the plaintiff's ailments, both mental and physical, in determining her RFC, or in the alternative provide rationale for

according the opinions of Drs. Mangold and Burnett little or no weight.  Once the ALJ has made his determination of plaintiff's RFC, the vocational expert should be consulted to reconsider whether or not, given plaintiff's limitations, she is capable of performing work which exists in the national economy.

## **CONCLUSION**

For the reasons set forth above, the case is remanded to the Commissioner for an <u>expedited</u> hearing for the purpose of considering plaintiff's mental limitations in combination with her physical limitations in determining whether claimant has a residual functional capacity sufficient to perform work existing in the national economy.  Both plaintiff's and defendant's motions for judgment on the pleadings are denied without prejudice.

ALL OF THE ABOVE IS SO ORDERED.

<u>     s/Michael A. Telesca     </u>
MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         July 14, 2008